IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANN GARRISON, | : | |
| | : | Case No. 2:15-CV-01674 |
| **Plaintiff,** | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Kemp |
| UNION SECURITY INSURANCE CO., | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before the Court on the following motions: (1) Plaintiff Ann Garrison's Objection to the Administrative Record and Motion to Supplement the Record (Doc. 12); (2) Plaintiff's Motion for Judgment on the Administrative Record (Doc. 13); and (3) Defendant Union Security Insurance Company's[1] ("USIC") Motion for Judgment on the Administrative Record. (Doc. 15.)

For the reasons that follow, the Court **DENIES** Plaintiff's Motion to Supplement the Record; **DENIES** Plaintiff's Motion for Judgment on the Administrative Record; and **GRANTS** Defendant's Motion for Judgment on the Administrative Record.

### I.   BACKGROUND

Plaintiff Ann Garrison's son, Kyle Garrison, died in an automobile accident in Vinton County, Ohio on March 17, 2014 at approximately 6:30 a.m. (Administrative Record, Doc. 11 at 98, 72.) At the time of his death, Mr. Garrison was an employee of Lithko Contracting, Inc., which was a participant in an employer-sponsored group automobile accident insurance plan

---

[1] Plaintiff filed her complaint against USIC, Lithko Contracting, Inc., and Assurant Employee Benefits. However, the parties subsequently filed a joint motion to dismiss Lithko Contracting, Inc., Plaintiff's employer, and Assurant Employee Benefits, which administered USIC's plan. (Doc. 8.) The Court granted the motion on October 21, 2015. (Doc. 19.)

1

with USIC. (*Id.* at 1.) Plaintiff was listed as Mr. Garrison's beneficiary. The plan provided automobile accident benefits ("AA benefits") for a beneficiary if the insured died "as the direct result of an automobile accident *injury* while . . . properly wearing an unaltered seat belt installed by the automobile's manufacturer." (*Id.* at 24.) Among other exclusions under the plan, no benefits are available if the automobile accident occurred when the insured was "breaking any traffic laws of the jurisdiction in which the automobile [was] being operated." (*Id.*)

A few minutes after the accident, the Ohio State Highway Patrol ("OSHP") arrived on the scene. The investigating officer later completed a report ("OSHP Report") narrating the accident as follows: "Unit #1 [a Jeep] was northbound on [State Route] 93. Unit #2 [Mr. Garrison's Ford Ranger] was southbound on SR 93. Unit #2 went left of center and struck Unit #1 head-on. Unit #1 went off the right side of the roadway and struck a hay [bale]. Unit #2 overturned coming to rest on the roadway." (*Id.* at 112.) Both Mr. Garrison and the driver of the Jeep died, and there were no other passengers in either car. There was one witness to the accident, Darin Corle. According to the OSHP Report, Mr. Corle gave a verbal statement to an OSHP officer immediately after the accident:

> advising that he had observed [Mr. Garrison's southbound Ranger] drive left of center and strike the northbound Jeep head-on. Upon taking the written statement he changed . . . his statement to indicate the northbound Jeep went left of center and struck the southbound [R]anger head-on. There was no evidence observed at the scene that supports the witness[']s claim that one of the vehicle[s] left its lane and lost control prior to the impact. The location the witness advised he was when he observed the crash was approximately 300 feet north of the area of impact. This section of roadway is not lighted and the crash occurred prior to dawn.

(*Id.* at 117.) The OSHP Report also described the location of the cars after the crash and concluded that based on the gouges and the cars' positions, Mr. Garrison's Ranger had traveled left of center before the collision:

2

> The gouges were isolated to the northbound lane. Both vehicles struck each other head-on but offset to the right. The major gouge was caused by the left front A-arm or frame of one of the two vehicles indicating that the southbound vehicle was left of center at the moment of impact. There was no evidence to support that unit one was left of center at all.

(*Id.*)

The OSHP later issued a Crash Reconstruction Report ("OSHP Reconstruction Report"). (*Id.* at 119-171.) The OSHP Reconstruction Report included Mr. Corle's written witness statement. (*Id.* at 144.) Mr. Corle stated that he had pulled off to the side of the road to check a tire on his vehicle and looked up when he heard tires sliding. (*Id.*) He observed that the northbound Jeep was "swerving left and right" and had lost control. (*Id.*) Mr. Garrison's southbound Ranger appeared to be "over to[] the right side towards the white line like he was trying to[] stay away from the other vehicle that was clearly out of control." (*Id.*) Mr. Corle also asserted that the Jeep seemed to be "traveling at a high rate of speed" but acknowledged he was not a "professional." (*Id.*) When asked a second time, Mr. Corle reiterated that the Jeep, not the Ranger, was left of center. (*Id.* at 145.)

The OSHP Reconstruction Report concluded that "the impact occurred in the northbound lane of SR-93 as the southbound Ford Ranger travelled left of the center line into the northbound Jeep Grand Cherokee." (*Id.* at 120.) As evidence for this conclusion, the Report noted that: circular tire smears near the center of the northbound lane appeared to indicate the area of impact; of the "very few gouges" found after the accident, all of them but one were located in the northbound lane; there was blue paint on the road surface from Mr. Garrison's car beginning where it turned over and extending into the southbound lane where it came to a stop; the pattern of the fluid path of Mr. Garrison's car indicated that the car was in the northbound lane and then after impact rotated counter clockwise and into the southbound lane where it slid to final rest;

3

and the location of other items at the scene, including the left front rim, left front tire, windshield, and bumper cover of the Jeep and the bumper and parking block of Mr. Garrison's Ranger, supported the Report's conclusion about the vehicle movement. (*Id.* at 120-21.) The Report also calculated, assuming a speed of 50-55 miles per hour for the other driver's car, that Mr. Garrison's car was traveling at a rate of 65 to 72 miles per hour. (*Id.* at 126-27.) The posted speed limit was 55 miles per hour. (*Id.* at 122.)

On March 20, 2014, Plaintiff filed claims with Assurant Employee Benefits, which administered USIC's plan, for life insurance benefits and AA benefits. (*Id.* at 65-66.) USIC awarded life insurance benefits to Plaintiff in the amount of $96,331.78. (*See id.* at 172-73.)

In a letter dated April 25, 2014, USIC denied Plaintiff's claim for AA benefits. (*Id.* at 173-74.) The letter further stated the claim would be denied due to the exclusion for coverage when the insured was "breaking any traffic laws of the jurisdiction in which the automobile [was] being operated." (*Id.* at 173.) USIC cited the Ohio Department of Public Safety Traffic Crash Report, which indicated that Mr. Garrison was breaking a traffic law by driving left of center at the time of the accident. (*Id.* at 174, 199.) Plaintiff was notified of her right to appeal and to submit additional evidence. (*Id.* at 174.) USIC's plan provided for a two-level appeals process.

Plaintiff, through counsel, appealed the denial of benefits. (*Id.* at 214.) She also submitted as additional evidence an 85-page accident reconstruction report from Steven Belyus, a Traffic Crash Reconstructionist from Stars Consulting, LLC ("Stars Report"). (*Id.* at 232-317.) Belyus visited the scene of the accident on the day it occurred and took photographs of the scene. (*Id.* at 233.) The following week, he documented the damage to Mr. Garrison's car and revisited the crash scene to take additional photos and measure the gouge at the center of the roadway.

4

(*Id.*)  Several months later, he examined the damage to the Jeep and conducted a "forensic map" of the crash scene, examining paint and other markings near the crash site.  (*Id.*)

The Stars Report noted that it was in agreement with the OSHP Report that the deep gouge near the center of the road was made by one of the vehicles.  (*Id.* at 234.)  The Stars Report concluded that at the time of impact, both vehicles were straddling the center of the roadway by about 1.5 feet each.  (*Id.*)  Notably, the Stars Report did not make any conclusions about which vehicle swerved across the center line first.  In its analysis of the paint, gouge, and tire marks at the scene and the damage to the two vehicles, the Stars Report contended that the OSHP Reconstruction Report erred in its interpretation of gouges in the pavement; the location of the impact; the post-impact vehicle movements; and the speed calculations of the vehicles.  (*Id.*)  It was critical of the OSHP Reconstruction Report's reliance on debris pattern and fluid pattern analysis to determine location of impact and post-impact vehicle movements, contending that these methods often fail to produce accurate accident reconstructions.  (*Id.* at 260-61.)  The Stars Report also faulted OSHP for failing to take into account an extra 910 pounds of items[2] in the Ranger when calculating the speed of the vehicles at the time of impact, concluding that, contrary to the OSHP Reconstruction Report's conclusion, the vehicles were likely traveling at the same speed and that neither vehicle applied the brakes prior to impact.  (*Id.* at 269-70, 280.)

On September 3, 2014, David Elvidge, an Appeal Specialist for USIC, denied Plaintiff's appeal.  (*Id.* at 319-320.)  The denial letter stated that the Stars Report "clearly states that Mr. Garrison was driving left of the center of the roadway by approximately 1.5 feet" and that

---

[2] The Stars Report contends that OSHP incorrectly calculated the speed of the two vehicles when it failed to take into account three 100-lb bags of cement that the Ranger contained at the time of impact, as well as a parking block and tools in the truck bed. (*Id.* at 256-57.)

5

because the Stars Report was consistent with the OSHP Reconstruction Report on this point, albeit not in agreement on "other specifics," the appeal would be denied. (*Id.* at 320.)

Plaintiff filed a second-level appeal on September 10, 2014. (*Id.* at 328-29.) Along with her letter of appeal, she submitted an additional accident reconstruction report from Crash Tech Reconstruction Services ("Crash Tech Report"). (*Id.* at 330-340.) The Crash Tech Report was compiled by Eric R. Brown on the basis of his review of the record and his May 1, 2014 inspections of the Jeep and the Ranger and visit to the scene of the accident, where he documented tire and gouge marks and fluid patterns. (*Id.* at 331-32.) During his investigation, he attempted to contact Mr. Corle for a follow-up interview about his statement but could not reach him. (*Id.* at 335.)

In Brown's opinion, the Jeep "began to swerve left and right, traveling left of center," and Mr. Garrison likely saw the Jeep "swerving into the southbound lane, and into his path of travel." (*Id.* at 339.) He believes that Mr. Garrison then attempted to steer into the northbound lane to avoid the Jeep, but the Jeep traveled back into the northbound lane directly into the Ford's path, and the Ranger stuck the Jeep on the left front corner. (*Id.* at 339-40.) He also concluded that due to wet road conditions, both vehicles were operating under the posted speed limit of 55 miles per hour. (*Id.* at 340.) Finally, he noted that due to snow accumulation on both sides of the roadway, swerving over the center line would have been the only option for Mr. Garrison to attempt to avoid the collision[3]. (*Id.*) He contended that his conclusions were consistent with the evidence at the scene, the vehicle inspections, and Mr. Corle's witness statement. (*Id.*)

---

[3] It is not clear upon what evidence the Crash Tech Report relied for its conclusion that snow accumulation would have rendered the sides of the road impassable in the event of an incoming vehicle swerving left of center. The Crash Tech Report notes that "[l]ight snow" had fallen overnight and had stopped at approximately 3:30 a.m. on March 17, but there does not appear to be any information about snow accumulation on State Route 93 on that day. (Doc. 11 at 333.)

However, he did not state specifically what pieces of physical evidence related to the scene or the vehicles he used to determine the sequence of events.

On October 7, 2014, USIC's Life Claims Appeals Committee denied the appeal. (*Id.* at 361.) The letter notifying Plaintiff of the denial, which, like the previous letter, was written by Appeal Specialist Elvidge, stated that the "Committee reviewed all the information submitted," which included both the Stars Report and the Crash Tech Report. (*Id.* at 362.) Mr. Elvidge reiterated his previous rationale for the first-level appeal denial:

> Despite the fact that the Ohio Department of Public Safety Traffic Crash Report and the [Stars Report] do not exactly agree on other specifics, both reports agree that Mr. Garrison was left of the center line when the collision occurred. Therefore, I concluded based on the information available that Mr. Garrison was breaking a traffic law and Automobile Accident Benefits were not payable.

(*Id.*) Mr. Elvidge went on to describe the Committee's rationale for the second denial as follows:

> The Committee noted that despite other inconsistencies, all three crash reports indicated that the vehicle operated by Mr. Garrison was over the center line when the crash occurred. The Ohio Public Safety Traffic Crash Report specifically contradicts the findings of the Crash Tech report that Mr. Garrison was reacting to the other vehicle swerving into his lane. It states, in part, that "There is no evidence observed at the scene that supports the witnesses [sic] claim that one of the vehicle [sic] left its lane and lost control prior to the impact." All of the reports, including the Crash Tech report, reached conclusions that were inconsistent with the written statement of the witness Mr. Corle who indicated that he observed Mr. Garrison's vehicle "going south appeared too [sic] me as being over too [sic] the right side towards the white line like he was trying too [sic] stay away from the other vehicle . . . ." The Committee found that the evidence in the file supports a finding that he was breaking a traffic law by operating his motor vehicle over the center line at the time of the accident. Therefore, the Committee concluded that no Automobile Accident Benefits were payable.

(*Id.*)

On April 15, 2015, Plaintiff filed a complaint against USIC in the Vinton County Court of Common Pleas. (*See* Doc. 3.) The complaint alleges wrongful denial of automobile accident benefits under 29 U.S.C. § 1132(a)(1)(B) and breach of fiduciary duty under 29 U.S.C. § 1132(a)(3). Defendant removed the case to this Court. (Doc. 1.) On August 20, 2015, Plaintiff

7

filed an Objection to the Administrative Record and Motion to Supplement the Record, which Defendant opposed.  (Doc. 12.)  The parties then filed cross-motions for judgment on the administrative record.  (Docs. 13, 15.)

## II.     ANALYSIS

### A.  Motion to Supplement the Record

As a preliminary matter, Plaintiff contends that Defendant improperly removed two letters from the administrative record before filing it with the Court.  (Doc. 12 at 2.)  The first letter was mailed by Plaintiff's Counsel to Defendant on December 5, 2015, approximately two months after Defendant had issued its final decision denying Plaintiff's claim on October 7, 2014.  The letter disputed the denial of the claim and also made an offer of settlement.  (Doc. 12-1 at 1-2.)  Finally, the letter "invited [Defendant] to provide [Plaintiff] with any additional evidence indicating that Mr. Garrison's operation of the vehicle was not legally justified at the time of the accident."  (*Id.* at 2-3.)  On December 12, 2014, Defendant's Counsel responded to the letter, stating that it stood by its denial of benefits and declining to accept Plaintiff's settlement demand.  (Doc. 12-2 at 1.)

Plaintiff now contends that the two letters should be considered part of the administrative record because: (1) Defendant's letter effectively "re-opened" the record (Doc. 12 at 3); and (2) the letters are offered in support of a procedural challenge to the administrator's decision.  (*Id.* at 4.)

The scope of the Court's review of the denial of benefits "is limited to the administrative record available to the plan administrators when the final decision was made."  *Marks v. Newcourt Credit Grp.*, 342 F.3d 444, 457 (6th Cir. 2003).  There is some support for the proposition that if Defendant had attempted to gather new evidence or present new arguments

8

after the date of the final benefits determination, Plaintiff would be entitled to the same opportunity. *See Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 521 (6th Cir. 1998) ("[O]bviously, it is not open to a plan administrator to curtail consideration of the information propounded by the plan beneficiary, while continuing to accumulate information that bolsters a denial decision already made.") But that is not the case here. Defendant's letter offered no further evidence to support Defendant's position nor did it indicate that Defendant was in the process of gathering any additional evidence. (*Id.* at 1-2.)

As to Plaintiff's second argument, a district court may consider new evidence only when a plaintiff has been "denied a full and fair opportunity for review of [the plan administrator's] decision, in other words, when a plan has not afforded a plaintiff the protection of a procedural requirement. *VanderKlok v. Provident Life & Accident Ins. Co., Inc.*, 956 F.2d 610, 617 (6th Cir. 1992) (permitting the plaintiff to introduce new evidence after the defendant failed to give notice of the proper steps he could take to obtain review of the denial of his claim). *See also Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998) (Gilman, J., concurring) ("The only exception to the . . . principle of not receiving new evidence at the district court level arises when consideration of that evidence is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part.").

Plaintiff's letter does not contain any allegation of procedural irregularity or bias but merely disputes what it considers Defendant's failure to apply Ohio law correctly. Plaintiff's Motion to Supplement the Record is **DENIED**.

### B. Cross-Motions for Judgment on the Administrative Record

*1. Wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B)*

a. Standard of Review

The parties dispute which standard of review applies to Plaintiff's wrongful-denial-of-benefits claim under 29 U.S.C. § 1132(a)(1)(B). This Court reviews an ERISA plan administrator's denial of benefits de novo "unless the plan gives the administrator discretionary authority to determine eligibility for benefits." *Cox v. Standard Life Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009). If the plan grants such authority, the deferential arbitrary and capricious standard of review applies. *Id.* Here, USIC's plan provides:

> The *policyholder* delegates to us and agrees that we have the sole discretionary authority to determine eligibility for participation or benefits and to interpret the terms of the *policy*. All determinations and interpretations made by us are conclusive and binding on all parties.

(Doc. 11 at 28.)

Despite this language, Plaintiff advances a theory that de novo review is appropriate because the applicability of a policy exclusion is at issue. (Doc. 13 at 3.) But Plaintiff conflates the standard of review and the burden of proof. It is true that "[a]n ERISA plan, not the participant, has the burden of proving an exclusion applies to deny benefits." *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 443 (6th Cir. 2005) (citing *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 580 (6th Cir. 2002)); *see also Caffey v. Unum Life Ins. Co.*, 107 F.3d 11, 1997 WL 49128, at *3 (6th Cir. Feb. 3, 1997) (unpublished) ("Inasmuch as [the plan] seeks to establish an exclusion from coverage, the burden rests with it to establish by a preponderance of the evidence that the . . . exclusion prevents [the plaintiff] from prevailing."). But the Sixth Circuit has never held that a dispute over the applicability of an exclusion triggers de novo review. In fact, it has applied the arbitrary and capricious standard in such cases. *See, e.g.*, *Hernandez v. Hartford Life & Acc. Ins.*

*Co.*, 462 F. App'x 583, 584 (6th Cir. 2012).  Because USIC's plan contains language granting discretion to the plan administrator to determine eligibility for benefits, and Plaintiff admits as much (Doc. 13 at 4), the Court will apply the arbitrary and capricious standard of review.

The dual role and inherent conflict of interest of an insurer like USIC in the administration and payment of claims is considered as a factor in this analysis, but it does not alter the "arbitrary and capricious" standard of review altogether.  *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115-16 (2008); *see also Cox*, 585 F.3d at 299 ("In close cases, courts must consider that conflict as one factor among several in determining whether the plan administrator abused its discretion in denying benefits.").

Under this deferential standard of review, where the plan administrator "offer[s] a reasoned explanation, based on the evidence for a particular outcome, that outcome is not arbitrary or capricious." *Id*.  Put differently, the Court must consider whether USIC's decision to deny AA benefits to Plaintiff was "the result of a deliberate, principled reasoning process" and is "supported by substantial evidence." *Elliot v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006).  Although the Court's review is deferential, "it is not a rubber stamp for the administrator's determination." *Id.* ("[D]eferential review is not *no* review.").

b.  <u>Merits</u>

Plaintiff maintains that the Court should grant her motion for judgment on the administrative record even under an arbitrary and capricious standard of review.  (Doc. 13 at 10-13.)  Defendant urges the Court to uphold the denial of benefits for the simple reason that all three of the three accident reconstruction reports were in agreement that Mr. Garrison's vehicle crossed the highway's center line just before the accident.  (Doc. 16 at 10.)  But Plaintiff asserts that such a conclusion was arbitrary and capricious because Defendant failed to apply Ohio law

11

correctly, selectively reviewed the record, and ignored evidence that suggested that Mr. Garrison crossed the center line in order to avoid the oncoming Jeep.

First, the Court addresses Plaintiff's contention that USIC failed to apply Ohio law properly in finding that Plaintiff had violated Ohio Revised Code § 4511.25(A) because USIC did not acknowledge the "sudden emergency exception" or analyze whether this exception applied to the facts at hand.  (Doc. 13 at 12-13.)  Ohio Revised Code § 4511.25(A) provides that a vehicle "shall be driven upon the right half of the roadway."  As such, driving on the left side is a violation of Ohio traffic law.  But § 4511.25(A) contains several exceptions, including "[w]hen an obstruction exists making it necessary to drive to the left of the center of the highway."  Ohio Rev. Code § 4511.25(A)(2).  Ohio courts have also recognized a doctrine of sudden emergency. *See Bennett v. Head*, No. 90-P-2214, 1991 WL 77286, at *3 (Ohio Ct. App. May 10, 1991) ("Additionally, the doctrine of sudden emergency does not require the person to make the most judicious choice between hazards presented; only that it be reasonable for a person in that position.  Clearly, it is reasonable for a person to panic when suddenly confronted with an oncoming vehicle in the same land of a two-lane road on a rainy night.").

Even though Defendant did not specifically acknowledge the sudden emergency exception, it implicitly considered whether that exception applied—and determined that it did not—when in the second-level appeal denial it credited the OSHP Reconstruction Report that no physical evidence supported the witness's statement that the other driver's Jeep left its lane and lost control prior to impact.  (Doc. 11 at 362.)  Moreover, although the Stars Report does contradict the OSHP Reconstruction Report in some respects—for instance, in its estimated speed of the vehicles at the time of the collision—the Stars Report did not explicitly make any finding about whether Mr. Garrison's car or the other driver's car crossed the center line first, or

12

whether one car was out of control. (*See* Doc. 11 at 269-270.) Indeed, the Stars Report only made a finding that both cars had crossed the center line by approximately 1.5 feet at the time of impact, and this conclusion could easily support the OSHP Reconstruction Report's finding that Mr. Garrison was violating an Ohio traffic law by driving left of center and that the sudden emergency exception did not apply—particularly because the Stars Report took no position on what events likely caused the two cars to cross the center line just before impact. (*See id.* at 234.)

Further, the second-level appeal denial stated that the Crash Tech Report, which purported to rely on the statement of a lone witness, Mr. Corle, as well as certain physical evidence, to conclude that the Jeep was out of control, actually reached a conclusion that was inconsistent with the witness's statement: the witness described Mr. Garrison's vehicle as hugging the right side ("towards the white line") of the southbound lane in an attempt to avoid the Jeep, whereas the Crash Tech Report stated that the Ranger went over the center line into the northbound lane to avoid the Jeep because it could not go to its right given the presence of snow embankments next to the roadway. (*Id.* at 340.) As Defendants also point out, Mr. Corle's statement lacked other indicia of reliability: he was situated over 300 feet from the accident on the side of the highway; the accident took place when it was dark outside; and he changed his account between his initial verbal statement to the officer on the scene and a follow-up written statement a few minutes later. Due to these circumstances, as well as his statement's inconsistency with all three reconstruction reports, there was substantial evidence in the record to discredit the witness's statement. This is not a case where an administrator acted arbitrarily and capriciously by "engage[ing] in a selective review of the administrative record to justify a decision" to deny coverage. *Metro Life Ins. Co. v. Conger*, 474 F.3d 258, 265 (6th Cir. 2007)

(internal quotation marks and citation omitted).  On the contrary, USIC acknowledged the inconsistencies and explained its decision to credit the OSHP Reconstruction Report.

Plaintiff next contends that Defendant's denial was arbitrary and capricious because Defendant was on notice that readily-available evidence existed to confirm claimant's theory and it ignored such evidence.  (Doc. 13 at 10.)  The case that Plaintiff cites for this proposition is inapposite.  In *Harrison v. Wells Fargo Bank, N.A.*, the court found that defendant's denial of benefit was arbitrary and capricious because the defendant was "on notice that [the plaintiff] was seeking treatment for mental health conditions and . . . had [the treating physician's] contact information, as well as properly signed release forms from [the plaintiff], the plan administrator chose to remain willfully blind to readily available information that may well have confirmed [the plaintiff's] theory of disability."  773 F.3d 15, 20 (4th Cir. 2014).  The only available evidence that Defendant purportedly ignored here is the witness's account that the Jeep was traveling at a high rate of speed and was out of control.  But as discussed above, Defendant's second-level appeal denial letter, while not exceedingly detailed, explicitly mentions the witness's statement and sufficiently explains its decision not to credit his account of the crash on the ground that all three reports reached conclusions that were inconsistent with the witness's statement that Garrison's Ranger appeared to be hugging the right side of the southbound lane "towards the white line" in an attempt to stay away from the Jeep.  (Doc. 11 at 362.)

Nor is this an example of a plan administrator relying on a file review that was "inadequate in several crucial respects."  *Evans v. UnumProvident Corp.*, 434 F.3d 866, 878 (6th Cir. 2006) (citing *Kalish v. Liberty Mut./Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 510 (6th Cir. 2005)).  On the contrary, the OSHP Reconstruction Report, an unbiased source from a state agency, was comprehensive and detailed.  Therefore, the Court declines to find that minor

differences among the three reports *require* a finding that the OSHP Reconstruction Report was inadequate.  *Cf. Kalish*, 419 F.3d at 510 (holding that a plan's exclusive reliance on an independent physician's file review was inadequate because the independent physician's report did not state what kind of work the claimant could perform, failed to rebut contrary medical conclusions reached by claimant's treating physician, and neglected even to mention the plan's own field investigator's observations that contradicted the independent physician's conclusions).

Finally, Plaintiff is not on solid ground with her argument that USIC's decision was arbitrary and capricious because it did not hire its own crash reconstruction expert or commission its own report.  (Doc. 17 at 4.)  The Court has found no case to suggest that a plan is required to commission such a report in these circumstances.  *Harrison*, the Fourth Circuit case that Plaintiff cites, explicitly distinguished other cases where the record was sufficient to refute a claimant's argument.  773 F.3d at 22.  USIC was entitled to credit the OSHP Reconstruction Report, authored by a neutral state agency based on observations conducted and physical evidence reviewed shortly after the collision, provided that it explained its reasons for doing so.  *See McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003) ("Generally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision.").

Because there was substantial evidence—specifically, in the OSHP Reconstruction Report—to support a finding that Mr. Garrison was breaking an Ohio traffic law at the time of the accident, and because that evidence was not clearly contradicted (and in some respects is supported) by the Crash Tech Report and the Stars Report, the Court finds that USIC's denial of

benefits was not arbitrary and capricious. Defendant is entitled to judgment on Plaintiff's wrongful-denial-of-benefits claim.

### 2. Breach of fiduciary duty under 29 U.S.C. § 1132(a)(3)

#### a. Standard of Review

As to Plaintiff's claim for breach of fiduciary duty, the Sixth Circuit has held in multiple published and unpublished opinions that such claims "are not claims for denial of benefits and are therefore addressed in the first instance in the district court, requiring no deference to any administrator's action or decision." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 427 (6th Cir. 2006). *See also Stiso v. Int'l Steel Grp.*, 604 F. App'x 494, 498 (6th Cir. 2015); *Bidwell v. Univ. Med. Ctr., Inc.*, 685 F.3d 613, 616 (6th Cir. 2012).

Defendant mistakenly asserts that only unpublished cases have applied de novo review to these claims, which is not true. But Defendant is correct that earlier Sixth Circuit cases applied arbitrary and capricious review to claims for breach of fiduciary duty. *See, e.g.*, *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 711-12 (6th Cir. 2000). And although the Supreme Court has never decided which standard of review applies to such claims, it has acknowledged that its precedents could be interpreted as mandating arbitrary and capricious review for § 1132(a)(3) claims. *See Varity Corp. v. Howe*, 516 U.S. 489, 514 (1996) ("[C]haracterizing a denial of benefits as a breach of fiduciary duty does not necessarily change the standard a court would apply when reviewing the administrator's decision to deny benefits.")

Because Plaintiff's claim for breach of fiduciary duty fails under either standard of review, however, this Court need not attempt to reconcile conflicting precedent. For the reasons that follow, even de novo review does not save Plaintiff's breach-of-fiduciary-duty claim.

b.  Merits

Plaintiff alleges that USIC has breached its fiduciary duty to the Garrisons because it: (1) failed to apply Ohio law; (2) ignored expert reports that contradicted the OSHP's analysis; and (3) "had a pecuniary conflict of interest by operating as both the decision-maker and payor of this claim." (Doc. 13 at 13-15.)  Defendant counters that Plaintiff has merely repackaged her claim for wrongful denial of benefits as one for breach of fiduciary duty.  (Doc. 16 at 16-17.)  The Sixth Circuit has held that "a claimant cannot pursue a breach-of-fiduciary-duty claim under [§ 1132(a)(3)] based solely on an arbitrary and capricious denial of benefits where the [§ 1132(a)(1)(B)] remedy is adequate to make the claimant whole."  *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 371 (6th Cir. 2015) (en banc).  None of Plaintiff's allegations of breach of fiduciary duty implicates a different injury than the injury she suffered from the wrongful denial of her benefits.  *See id.* at 373.  Indeed, her complaint alleges that USIC "breached [its] fiduciary duties by denying the Plaintiff's claim, based on an unreasonable and unlawful interpretation of an exclusion in this accidental death insurance policy."  (Doc. 3 at ¶ 44.)  Since she has not alleged any injury separate from the wrongful denial of benefits, she is not entitled to relief under § 1132(a)(3).

Plaintiff tries to hang her hat on a post-*Rochow* case, *Stiso v. International Steel Group*, in which the Sixth Circuit held that a plaintiff could bring a breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(3) where the insurance plan provided a summary plan description that led plaintiff reasonably to believe that he would receive a 7% yearly increase in benefits and then denying his claim.  604 F. App'x at 496.  *Stiso* is not analogous to this case, however.  There, the Sixth Circuit explicitly distinguished *Rochow* in noting that *Rochow* concerned a plan participant's attempt to recover benefits under both § 1132(a)(1)(B) and § 1132(a)(3) "for a

17

single injury." *Id.* at 500 n.4 ("Here, plaintiff seeks one remedy under § [1132(a)(3)] for one injury—the defendants' breach of fiduciary duty in providing a summary plan description to plan participants that did not fully and accurately communicate the plan provisions."). Because Plaintiff makes no argument that she has suffered two distinct injuries, her § 1132(a)(3) claim is duplicative of her § 1132(a)(1)(B) claim and, therefore, must fail under controlling precedent in *Rochow*.

### III.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Supplement the Record, **DENIES** Plaintiff's Motion for Judgment on the Administrative Record, and **GRANTS** Defendant's Motion for Judgment on the Administrative Record.  The clerk is directed to enter Judgment for Defendant.

**IT IS SO ORDERED.**

                                                  **s/ Algenon L. Marbley**
                                                  **ALGENON L. MARBLEY**
                                                  **UNITED STATES DISTRICT JUDGE**

**DATED:  January 13, 2016**